UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| Gary Wheeler, | ) | Civil Action No. 5:15-4995-PMD-KDW |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | REPORT AND RECOMMENDATION |
| Carolyn W. Colvin, Acting | ) | OF MAGISTRATE JUDGE |
| Commissioner of Social Security, | ) | |
| Defendant. | ) | |

This appeal from a denial of social security benefits is before the court for a Report and
Recommendation ("Report") pursuant to Local Civil Rule 73.02(B)(2)(a) (D.S.C.). Plaintiff
brought this action pursuant to 42 U.S.C. § 405(g) to obtain judicial review of the final decision
of the Commissioner of Social Security ("Commissioner") denying his claim for Disability
Insurance Benefits ("DIB") pursuant to the Social Security Act ("the Act"). For the reasons that
follow, the undersigned recommends that the Commissioner's decision be affirmed.

I.      Relevant Background

   A.      Procedural History

   On April 15, 2012,[1] Plaintiff protectively filed for DIB under Title II of the Act, 42
U.S.C. §§ 401-433, alleging he became disabled on April 6, 2012. Tr. 199-202. After being
denied initially, Tr. 90, and on reconsideration, Tr. 105, Plaintiff requested a hearing before an
Administrative Law Judge ("ALJ"), Tr. 119-20. The ALJ conducted a hearing on June 17, 2014,
taking testimony from Plaintiff and Vocational Expert ("VE") Arthur Schmitt. Tr. 48-76. The
ALJ denied Plaintiff's claim in a decision dated July 31, 2014. Tr. 30-41. Plaintiff requested
review of this decision from the Appeals Council. Tr. 20-21, 26-29. The Appeals Council denied

---

[1] Although the application was completed on April 16, 2012, Plaintiff's protective filing date is
April 15, 2012, as indicated in the Disability Determination and Transmittal. Tr. 90.

his request on November 24, 2015, Tr. 1-3, making the ALJ's decision the Commissioner's final decision for purposes of judicial review. Plaintiff brought this action seeking judicial review of the Commissioner's decision in a Complaint filed December 18, 2015. ECF No. 1.

B.    Plaintiff's Background

Born in July 1962, Plaintiff was 49 years old on his alleged onset date of April 6, 2012. Tr. 229. Plaintiff completed one year of college and his past relevant work ("PRW") included work in a shipyard as a shipfitter, shipfitter lead man, shipfitter/welder foreman. Tr. 233. In applying for DIB, Plaintiff listed the following conditions that limit his ability to work: "aorta valve replacement, extreme shortness of breath; easy fatiguability (sic); right sided weak; poor circulation right side; feet swelling; excessive thirst; hypertension; difficulty grasping objects with right hand; [and] heart problems-aorta, htn, shortness of breath, fatigue." Tr. 232. Plaintiff indicated he made changes to his work activity because of these conditions in October 2011, and stopped working because of the conditions on April 6, 2012. *Id.*

C.    Administrative Proceedings

1.    Plaintiff's Testimony

On June 17, 2014, Plaintiff appeared with counsel at an administrative hearing and testified regarding his application for DIB. Tr. 48-68. VE Schmitt also appeared and testified at the hearing. Tr. 68-72.

In response to questions from the ALJ Plaintiff confirmed that he was 51 years old and had completed one year of college. Tr. 53. Plaintiff testified that his work for the past 15 years was as a pipefitter and shipfitter, with the last four or five years as a supervisor. *Id.* Plaintiff testified that as a supervisor he did not "have to drag 100 pounds of tools around . . . and [he] didn't have to use a torch all day or weld all day." Tr. 54. Plaintiff testified that since his alleged

onset date in April 2012 he has not worked other than for 10 days in June 2012 when he attempted to return to work after his surgery; he was unable to do the work and has not worked since. *Id.* Plaintiff testified that he collected unemployment benefits from Virginia in 2012 and the benefits ran out in the fourth quarter of 2012. Tr. 55-56. Plaintiff testified that he was unable to work because he had shortness of breath, very limited use of his right hand, and his left leg "goes out" on him. Tr. 56. Plaintiff stated that he is "constantly in pain" and the pain is located in his chest and right arm—and he is right-handed. *Id.* Plaintiff testified that he had open heart surgery to correct an aortic dissection in April 2012. Tr. 57. The ALJ asked if the doctor's notation from June 2012 that Plaintiff "feels great, is walking four miles a day, and is basically a-symptomatic meaning no symptoms as a result" was accurate. Plaintiff stated that his arm never stopped bothering him, but he "was adamant trying to get back to work" and badgered the doctor at the free clinic into letting him go back to work. *Id.* Plaintiff testified that he was in "really bad shape" before the surgery and after the surgery he was breathing better. Tr. 57-58. Plaintiff stated that he felt he over-exerted himself trying to "get back to normal" and back to work. Tr. 58. Plaintiff stated that his arm has gotten worse and his leg has started to lose muscle. *Id.* Plaintiff testified that when he returned to work he was a shipfitter/supervisor and "just sat down all day." *Id.* Plaintiff stated that his co-workers "carried [him] until [his] boss said no we can't pay you to do this[.]" *Id.* Plaintiff testified that since his surgery he has been using a cane that was prescribed for him. Tr. 59.

In response to questions from his counsel Plaintiff testified that he was desperate to return to work so that he would be able to take care of his family. The resident doctor at the Centerra Clinic (in Virginia) wrote him a return to work. Tr. 60. Plaintiff confirmed that the doctor was not a cardiologist and that he told her that he was feeling great although he still had shortness of

breath and some problems with his left leg and arm that have gotten worse. Tr. 61-62. Plaintiff confirmed that no one has been able to explain why his conditions have worsened, and once he came to South Carolina he did not have insurance so he could not undergo neurological testing. Tr. 62.  Plaintiff testified that after "going to the emergency room and obtaining so many medical bills" he was provided paperwork so that he could be seen at the Trident free clinic. *Id.* Plaintiff stated that he went to MUSC three times to be seen by a neurologist but "each time that [he] got to MUSC and taken the time to drive down there, they would not see [him]. [He] didn't have the cash to pay them and [he] had no insurance." Tr. 63. Counsel asked Plaintiff about the notation of Dr. Graves that stated Plaintiff walked a half mile to his mailbox twice a day. *Id.* Plaintiff testified that statement was incorrect and what he actually told Dr. Graves was that when he walked to his mailbox and back it felt like he had walked a half mile, but from his front door to his mailbox is approximately 25 feet. *Id.* Plaintiff stated he was unaware that Dr. Graves had put that notation in his medical records. *Id.* Counsel also asked about a notation from Dr. Graves that indicated after an ice storm in March 2014 Plaintiff was able to cut and clean up fallen branches. Tr. 64. Plaintiff testified that on the day of that doctor's visit Dr. Graves asked Plaintiff if he was depressed and Plaintiff told him "of course I'm depressed. I'm not able to take care of my family." *Id.* Plaintiff testified that he told the doctor that after the ice storm his son and his brothers were outside cleaning his yard and he was not able to help them. *Id.* Plaintiff testified that he did not know Dr. Graves put that notation in his records and that Dr. Graves did not question him in any detail regarding those activities. *Id.*

Plaintiff testified that his shortness of breath has been stable over the last year. Tr. 64-65. With regard to his ability to stand and walk Plaintiff testified that once he left the hearing and walked to his car he would have to sit and rest because he would be winded. Tr. 65. Plaintiff

confirmed the accuracy of Dr. Graves' opinion that he could walk off and on for two hours out of an eight-hour day but not six hours. *Id.* Plaintiff stated he did not know his limitations for lifting and carrying because he would have to put weight on his leg and other arm and he had to walk with a cane. *Id.* Plaintiff testified that he would be unable to occasionally lift 20 pounds, but could frequently lift something weighing as much as a gallon jug of milk. Tr. 66. Plaintiff stated that he has limitations with use of his right hand and has learned to sign his name with his left hand. *Id.* Plaintiff testified that he lives in his deceased mother's home and his siblings and cousins pay the bills. Tr. 67. Plaintiff stated that he spends most of his day reading, and he does attend church. *Id.* Plaintiff stated that before his son graduated he would attend his basketball games. *Id.*

## 2. VE's Testimony

VE Schmitt also testified at the hearing. The VE identified Plaintiff's PRW as follows: "Ship fitter, 8, skilled, heavy. DOT of . . . 806.381-046. Ship fitter supervisor, 8, skilled, light, same DOT, 806.381-046." Tr. 68. The ALJ asked the VE to assume the following:

> [A] person of the claimant's age, education, and past work as you just identified. Who would be limited to a light residual functional capacity[.] However, this individual can only stand and walk for a total of two hours in an eight hour workday. Would also require a cane for ambulation. This person can frequently but not constantly use the right upper extremity for pushing and pulling. Should never climb ladders, ropes, or scaffolds. Can occasionally climb ramps and stairs. And also only occasionally balance, kneel, stoop, crouch but can never crawl. This individual should avoid concentrated exposure to temperature extremes, to humidity, and work place hazards.

Tr. 69. The ALJ asked if a person with those restrictions could return to either of Plaintiff's past jobs and the VE testified that the person "could not do any of the past relevant work." *Id.* The VE identified the following other jobs that were available in the local or national economy that such a person could perform: "storage facility clerk, 2, unskilled, light, DOT of 295.367-026 . . .

4,400 in South Carolina, 416,000 nationally. Ticket taker, 2, unskilled, light, DOT of 344.667-010. 1,260 in South Carolina, 104,000 nationally. Coupon redemption clerk, 2, unskilled, light, DOT of 290.477-010. 200 in South Carolina, 14,700 nationally." Tr. 69-70. The VE confirmed his testimony was consistent with the DOT. Tr. 70.

In response to Plaintiff's counsel the VE confirmed that the cited jobs were classified by the DOT as light exertional jobs. Tr. 70. Counsel noted that the limitation of two hours of standing and walking was consistent with sedentary work and asked the VE how a light job could be performed with that limitation. *Id.* The VE responded that "it can be a sit stand option on either of those jobs." *Id.* The VE confirmed that "the standing part could only be two hours' worth but the rest of it sitting." *Id.* The VE stated that he knew the jobs could be performed that way because he had observed them all within the last couple of years in the actual work settings. Tr. 71. The VE confirmed the storage facility clerk was for "one of those storage places where they have the garages" but stated that he had not placed anyone in those jobs because he does not "place people in jobs anymore." *Id.* The VE testified the ticket taker position was for the sort of setting like an aquarium or movie theatre, and the coupon redemption clerk could be in a restaurant sorting "the coupons that people turn in." *Id.* Counsel asked if the jobs could be performed if the individual was limited to occasional handling and fingering with the dominant extremity and the VE responded the individual could use the non-dominant hand. Tr. 71-72. Counsel asked the impact of having to use a cane with one hand. The VE responded that "[i]f it's triangularly only they could still do the jobs. If it's using for walking or moving around all the time then it can eliminate all the jobs." Tr. 72. The VE testified there were no transferrable skills to sedentary from Plaintiff's PRW. *Id.*

6

In a closing statement Plaintiff's counsel noted that Plaintiff's surgery was very serious and it was error for the resident doctor to allow Plaintiff to return to work in an industrial setting. Tr. 73. He also discussed the "conundrum" regarding sedentary versus light work given Plaintiff's limitations in receiving medical treatment other than from residents at the free clinic. Tr. 74. Counsel also believed there was a conflict in the vocational testimony that was not adequately resolved and that Plaintiff's RFC was more consistent with sedentary. Tr. 74-75. Counsel noted objective evidence of muscle wasting or atrophy from the October 2012 notes of cardiologist Dr. Joe Gatty at exhibit 8F. Tr. 75. Counsel concluded that given the severity of Plaintiff's impairment and the objective evidence from doctors who were not residents, a sedentary RFC had been established. Tr. 75-76.

II.     Discussion

   A.     The ALJ's Findings

In her July 31, 2014 decision, the ALJ made the following findings of fact and conclusions of law:

> 1.     The claimant meets the insured status requirements of the Social Security Act through December 31, 2017.
>
> 2.     The claimant has not engaged in substantial gainful activity since April 6, 2012, the alleged onset date (20 CFR 404.1571 *et seq.*).
>
> 3.     The claimant has the following severe impairments: status post thoracic aortic dissection with residual upper extremity weakness and left lower extremity atrophy (20 CFR 404.1520(c)).
>
> 4.     The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).
>
> 5.     After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional

capacity to perform light work as defined in 20 CFR 404.1567(b) except the claimant is limited to frequent use of his right upper extremity (dominant) for pushing/pulling. The claimant is limited to standing/walking for 2 hours and requires use of a cane for ambulation. The claimant must never climb ladders, ropes, or scaffolds, and never crawl. He is further limited to occasionally climbing ramps and stairs, balancing, kneeling, stooping and crouching. The claimant must avoid concentrated exposure to temperature extremes, humidity and hazards.

6.      The claimant is unable to perform any past relevant work (20 CFR 404.1565).

7.      The claimant was born on July 8, 1962 and was 49 years old, which is defined as an individual closely approaching advanced age, on the alleged disability onset date (20 CFR 404.1563).

8.      The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564).

9.      Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10.     Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569 and 404.1569(a)).

11.     The claimant has not been under a disability, as defined in the Social Security Act, from April 6, 2012, through the date of this decision (20 CFR. 404.1520(g)).

Tr. 35-41.

      B.      Legal Framework

          1.      The Commissioner's Determination-of-Disability Process

The Act provides that disability benefits shall be available to those persons insured for benefits, who are not of retirement age, who properly apply, and who are "under a disability," defined as:

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]

42 U.S.C. § 423(d)(1)(A).

To facilitate a uniform and efficient processing of disability claims, regulations promulgated under the Act have reduced the statutory definition of disability to a series of five sequential questions. *See, e.g., Heckler v. Campbell*, 461 U.S. 458, 460 (1983) (discussing considerations and noting "need for efficiency" in considering disability claims). An examiner must consider the following: (1) whether the claimant is working; (2) whether the claimant has a severe impairment; (3) whether that impairment meets or equals an impairment included in the Listings;[2] (4) whether such impairment prevents claimant from performing PRW; and (5) whether the impairment prevents the claimant from performing specific jobs that exist in significant numbers in the national economy. *See* 20 C.F.R. § 404.1520. These considerations are sometimes referred to as the "five steps" of the Commissioner's disability analysis. If a decision regarding disability may be made at any step, no further inquiry is necessary. 20 C.F.R. §

---

[2] The Commissioner's regulations include an extensive list of impairments ("the Listings" or "Listed impairments") the Agency considers disabling without the need to assess whether there are any jobs a claimant could do. The Agency considers the listed impairments, found at 20 C.F.R. Part 404, Subpart P, Appendix 1, severe enough to prevent all gainful activity. 20 C.F.R. § 404.1525. If the medical evidence shows a claimant meets or equals all criteria of any of the listed impairments for at least one year, he will be found disabled without further assessment. 20 C.F.R. § 404.1520(a)(4)(iii). To meet or equal one of these Listings, the claimant must establish that his impairments match several specific criteria or be "at least equal in severity and duration to [those] criteria." 20 C.F.R. § 404.1526; *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990); *see Bowen v. Yuckert*, 482 U.S. 137, 146 (1987) (noting the burden is on claimant to establish his

404.1520(a)(4) (providing that if Commissioner can find claimant disabled or not disabled at a step, Commissioner makes determination and does not go on to the next step).

A claimant is not disabled within the meaning of the Act if he can return to PRW as it is customarily performed in the economy or as the claimant actually performed the work. *See* 20 C.F.R. Subpart P, § 404.1520(a), (b); Social Security Ruling ("SSR") 82–62 (1982). The claimant bears the burden of establishing her inability to work within the meaning of the Act. 42 U.S.C. § 423(d)(5).

Once an individual has made a prima facie showing of disability by establishing the inability to return to PRW, the burden shifts to the Commissioner to come forward with evidence that claimant can perform alternative work and that such work exists in the regional economy. To satisfy that burden, the Commissioner may obtain testimony from a VE demonstrating the existence of jobs available in the national economy that claimant can perform despite the existence of impairments that prevent the return to PRW. *Walls v. Barnhart*, 296 F.3d 287, 290 (4th Cir. 2002). If the Commissioner satisfies that burden, the claimant must then establish that he is unable to perform other work. *Hall v. Harris*, 658 F.2d 260, 264–65 (4th Cir. 1981)*; see generally Bowen*, 482 U.S. at 146, n.5 (regarding burdens of proof).

2.     The Court's Standard of Review

The Act permits a claimant to obtain judicial review of "any final decision of the Commissioner made after a hearing to which he was a party." 42 U.S.C. § 405(g). The scope of that federal court review is narrowly tailored to determine whether the findings of the Commissioner are supported by substantial evidence and whether the Commissioner applied the proper legal standard in evaluating the claimant's case. *See id.*; *Richardson v. Perales*, 402 U.S.

---

impairment is disabling at Step 3).

389, 390 (1971); *Walls v. Barnhart*, 296 F.3d 287, 290 (4th Cir. 2002) (citing *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990)).

The court's function is not to "try these cases de novo or resolve mere conflicts in the evidence." *Vitek v. Finch*, 428 F.2d 1157, 1157–58 (4th Cir. 1971); *see Pyles v. Bowen*, 849 F.2d 846, 848 (4th Cir. 1988) (citing *Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986)). Rather, the court must uphold the Commissioner's decision if it is supported by substantial evidence. "Substantial evidence" is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 390, 401; *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005). Thus, the court must carefully scrutinize the entire record to assure there is a sound foundation for the Commissioner's findings, and that her conclusion is rational. *See Vitek*, 428 F.2d at 1157–58; *see also Thomas v. Celebrezze*, 331 F.2d 541, 543 (4th Cir. 1964). If there is substantial evidence to support the decision of the Commissioner, that decision must be affirmed "even should the court disagree with such decision." *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972).

C.     Analysis

Plaintiff alleges: (1) given Dr. Graves' finding that he needs to use a cane at all times, coupled with the VE's testimony that the need to use a cane all the time would eliminate all jobs, the court should remand the case with instructions to award benefits; (2) the finding that Plaintiff can perform light work cannot be sustained given the ALJ's finding he is limited to standing/walking for two hours in an eight-hour day and he requires the use of a cane for ambulation; (3) because Plaintiff is limited to sedentary work and Medical-Vocational Guidelines Rule 201.14 directs a finding of disability for someone of Plaintiff's age, education and work experience, the court should remand the case with instructions to award benefits; and

11

(4) the ALJ failed to properly evaluate Plaintiff's subjective symptoms and issued an improper conclusory credibility finding. Pl.'s Br. 1, ECF No. 17.

       1.       Treating Physician Opinion/VE Testimony and RFC Assessment

Plaintiff argues that although the ALJ gave considerable weight to the opinion of Dr. Travis Graves the ALJ failed to include all of Dr. Graves' limitations in his RFC assessment— that in addition to using a cane for ambulation, Plaintiff also needed the cane when bending and stooping at all times—and the ALJ failed to provide any reasons for rejecting part of Dr. Graves' limitations. Pl.'s Br. 15-17. Plaintiff asserts that this error is not harmless because the VE testified that "if an individual is using a cane 'for walking or moving around all the time then it can eliminate all jobs.'" Pl.'s Br. 18 (citing Tr. 72). The Commissioner argues that "the ALJ was not obligated to rely on any particular piece of medical evidence or any particular medical opinion when capturing the limitations in the RFC finding, and Plaintiff's claim to the contrary is legally incorrect." Def.'s Br. 12 (citing 20 C.F.R. § 404.1545(a)). The Commissioner also contends that because the VE's "testimony that a person who used a cane (other than a triangular cane) for walking or moving around all the time would be unemployable" was not supported by the record, the ALJ was not obligated to accept the VE's testimony. *Id.* In response, Plaintiff asserts the Commissioner has mischaracterized his argument. Pl.'s Reply 4-5, ECF No. 20. Plaintiff argues that the ALJ purportedly relied on Dr. Graves' opinion and failed to properly reject any part of it; however, the ALJ did not explain his "omission of the doctor's supported opinion as to the extent [Plaintiff] required an assistive device." *Id.*

       a.       Opinion of Dr. Travis Graves

In April 2014, Dr. Graves, a resident physician with Trident/MUSC Family Medicine Residency Program, completed a Treating Physician's Statement Social Security Disability

Physical Impairments questionnaire. Tr. 732-37. Dr. Graves indicated he reviewed Plaintiff's medical records, he first treated Plaintiff on December 20, 2013 and last treated him on April 4, 2014, and Plaintiff's diagnosis of impairment was radiculopathy.[3] Tr. 733. In response to the question asking if Plaintiff's "statements concerning symptoms and functional limitations [were] reasonably consistent with objective medical evidence?" Dr. Graves checked the box marked "No." *Id.* Regarding Plaintiff's limitations from April 2012 to the present Dr. Graves indicated Plaintiff could occasionally lift and/or carry 20 pounds; frequently lift and/or carry 10 pounds; could occasionally bend at the waist; stand and/or walk for at least 2 hours in an 8-hour workday with normal breaks; required use of a cane for walking or for bending/stooping at all times; was not limited in his ability to push and/or pull; could sit for a total of about 6 hours in an 8-hour workday with normal breaks; could continuously reach in all directions; and could constantly seize, hold, grasp, turn, or otherwise work with his hands. Tr. 734-36. Dr. Graves opined that episodes of increased symptoms and/or medical treatment would cause a work absence of fewer than two days per month. Tr. 736.

b.     VE's Testimony

At the administrative hearing, the ALJ posed a hypothetical to the VE that included a limitation that the individual would "require a cane for ambulation." Tr. 69. The VE identified the jobs of storage facility clerk, ticket taker, and coupon redemption clerk as unskilled jobs that could be performed by the hypothetical individual at the light exertional level. Tr. 69-70. Plaintiff's counsel asked the VE the impact on the jobs identified if the individual had to use a

---

[3] Radiculopathy is a condition due to a compressed nerve in the spine that can cause pain, numbness, tingling, or weakness along the course of the nerve. *See* http://www.medicinenet.com/radiculopathy/article.htm (last visited Dec. 28, 2016).

cane with one hand. Tr. 72.  The VE responded that if the individual was "using [the cane] for walking or moving around all the time then it can eliminate all jobs." *Id.*

> c.     ALJ's RFC Assessment

The ALJ made the following RFC assessment:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except the claimant is limited to frequent use of his right upper extremity (dominant) for pushing/pulling. The claimant is limited to standing/walking for 2 hours and *requires use of a cane for ambulation*. The claimant must never climb ladders, ropes, or scaffolds, and never crawl. He is further limited to occasionally climbing ramps and stairs, balancing, kneeling, stooping and crouching. The claimant must avoid concentrated exposure to temperature extremes, humidity and hazards.

Tr. 36 (emphasis added). In making his findings regarding Plaintiff's RFC, the ALJ set forth Plaintiff's testimony regarding his symptoms and his reported activities, the medical history of record, and the medical opinions of Plaintiff's treating physicians, evaluating physicians and the State agency medical and psychological consultants. Tr. 37-39. In considering Dr. Graves' opinion contained in the questionnaire the ALJ noted:

> In finding that the claimant is limited to less than the full range of light work, the undersigned has accorded considerable weight to the medical opinion of Dr. Graves, as his medical opinion regarding the claimant's limitations is generally supported by the weight of evidence of record. However, the undersigned finds that the claimant would be additionally limited to frequent, but not constant, use of his right upper extremity for pushing/pulling due to his reported right arm weakness and decreased strength. (Exhibit 5F and 11F)[4]

Tr. 39.  The ALJ also gave considerable weight to the September 2012 opinion of LPN Linda S. Husman of Sentara Vascular Specialists who opined that Plaintiff was "unable to tolerate demands of his former job. (Exhibit 7F)" Tr. 38-39. He gave considerable weight to the State

---

[4] Exhibit 5F contains 2012 progress notes from the Ambulatory Care Clinic in Norfolk, Virginia. Tr. 413-26. Exhibit 11F contains 2013-2014 treatment notes from Trident Family Health in Charleston, South Carolina. Tr. 713-31.

agency medical consultants' physical assessments that "allowed for light work with postural and environmental restrictions" finding they were "supported by the objective medical evidence of record." Tr. 39. However, the ALJ determined Plaintiff "would be limited in crawling and climbing ramp/stairs due to his reported left leg weakness and use of a cane."[5] *Id.* The ALJ concluded that the limitations in his RFC—including use of a cane for ambulation—were "consistent and supported by the opinion of the State agency consultants and the medical evidence of record as a whole. (Exhibit 1A, 4A, and 12F)[.]"[6] *Id.* The ALJ further elaborated:

> These limitations are further supported by the claimant's reported daily activities, as he is able to take care of his personal hygiene, do laundry, walk the dog, and attend church and his son's basketball games. Given the evidence regarding the claimant's pain, the undersigned concludes that the claimant would be precluded from the ambulation and exertion required in work above the light level of exertion. In light of the aforementioned inconsistencies, particularly the relatively conservative treatment of the claimant's symptoms, as well as the claimant's level of daily activity, the undersigned cannot find the claimant's allegation that he is incapable of all work activity to be credible. Accordingly, the undersigned finds that the claimant retains the capacity to perform work activities with the limitations set forth above.

Tr. 39. The ALJ determined Plaintiff was unable to perform his PRW and then considered whether there were other jobs that existed in significant numbers in the national economy that Plaintiff could perform. Tr. 39-40. The ALJ noted that Plaintiff's "ability to perform all or substantially all of the requirements of [the light] level of work has been impeded by additional limitations" and therefore he consulted with a VE to "determine the extent to which these limitations erode the unskilled light occupational base." Tr. 40. The ALJ determined that the

---

[5] On April 2, 2013, State agency medical consultant Dr. Ellen Humphries provided a physical RFC assessment of Plaintiff at the initial disability determination level. Tr. 84-86. Dr. Humphries determined that Plaintiff could "occasionally" climb ramps/stairs and could "never" crawl. Tr. 84. On May 3, 2013, State agency medical consultant Dr. Ramona Minnis provided a physical RFC assessment at the reconsideration level. Tr. 98-101. Dr. Minnis determined Plaintiff could "occasionally" climb ramps/stairs and could "occasionally" crawl. Tr. 99.

[6] Exhibit 1A contains the opinion of Dr. Humphries, exhibit 4A contains the opinion of Dr.

VE's testimony was consistent with the information in the DOT and based on the VE's testimony the ALJ concluded that "considering the claimant's age, education, work experience, and [RFC], the claimant is capable of making a successful adjustment to other work that exists in significant numbers in the national economy." Tr. 41.

d.    Discussion

An RFC assessment is a determination of an individual's ability to perform sustained work-related activities on a regular and continuing basis. SSR 96-8p, 1996 WL 374184 at *1. "RFC is not the *least* an individual can do despite his or her limitations or restrictions, but the *most*. *Id.* (emphasis in original). At the administrative hearing level the ALJ is responsible for assessing a claimant's RFC. 20 C.F.R. § 404.1546(c). An ALJ's RFC assessment should be based on all relevant evidence and will consider the claimant's ability to meet the physical, mental, sensory, and other requirements of work. 20 C.F.R. § 404.1545(a)(3) and (4).

Having considered the record evidence and the arguments of the parties as set forth in their briefs, the undersigned is of the opinion that the ALJ adequately considered the opinion of Dr. Graves. In reviewing the ALJ's consideration of the opinion of Plaintiff's physician, the court is focused on whether the ALJ's decision is supported by substantial evidence. The court is not to "undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). Ultimately, it is the responsibility of the Commissioner, not the court, to review the case, make findings of fact, and resolve conflicts of evidence. *Hays v. Sullivan,* 907 F.2d at 1456. However, the court must not abdicate its duty to scrutinize the record as a whole to determine

---

Minnis, and exhibit 12F is Dr. Graves' opinion.

whether the Commissioner's conclusions are rational. *Oppenheim v. Finch,* 495 F.2d 396, 397 (4th Cir. 1974).

Plaintiff contends that the ALJ erred because he did not consider the portion of Dr. Graves' opinion that Plaintiff also needed to use a cane for bending and stooping. However, Plaintiff does not state how the ALJ's RFC assessment was impacted by that omission—especially given that the ALJ limited Plaintiff to occasional stooping.[7] Therefore, the undersigned recommends that any error of the ALJ in that regard be considered harmless because it would not have changed the ALJ's RFC assessment or disability determination. *See Mickles v. Shalala*, 29 F.3d at 921 (affirming denial of benefits where the ALJ erred in evaluating claimant's pain because "he would have reached the same conclusion notwithstanding his initial error."). The undersigned also recommends a finding that the ALJ gave proper consideration to Dr. Graves' opinion and the VE's testimony.

2.    RFC Assessment for Light Work

Plaintiff asserts that "light work, by definition, generally entails standing and walking for six hours in an 8-hour workday and cannot be performed by an individual who can only stand and walk for two hours in an 8-hour workday and requires the 'use of a cane for ambulation.'" Pl.'s Br. 19. Plaintiff asserts that given these limitations, "the ALJ's finding that he can perform the exertional demands of light work cannot be sustained." *Id.* at 21. The Commissioner argues that the ALJ's two-hour limitation for standing/walking "did not convert the ALJ's RFC finding to sedentary . . . ." Def.'s Br. 14. The Commissioner contends that the "regulations and rulings

---

[7] The undersigned notes that although Plaintiff focuses on Dr. Graves' opinion related to use of a cane, Plaintiff does not address other portions of Dr. Graves' opinion that are not as helpful to his claim of disability. For example, in his initial statement Dr. Graves opined that Plaintiff's statements concerning symptoms and functional limitations were not reasonably consistent with the objective medical evidence. Tr. 733.

provide that there are light jobs that do not involve a 'good deal of walking or standing'" and SSA policy recognizes that "some light jobs can be performed in the seated position" belying Plaintiff's claim that the ALJ's "RFC finding contravened Agency policy." *Id.*

Here, the ALJ determined that Plaintiff "has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b)" with several limitations as discussed earlier in this Report. Tr. 36. SSR 83-10 clarifies the definition provided in the regulations for light level work:

> The regulations define light work as lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted in a particular light job may be very little, a job is in this category when it requires a good deal of walking or standing--the primary difference between sedentary and most light jobs. A job is also in this category when it involves sitting most of the time but with some pushing and pulling of arm-hand or leg-foot controls, which require greater exertion than in sedentary work; e.g., mattress sewing machine operator, motor-grader operator, and road-roller operator (skilled and semiskilled jobs in these particular instances). Relatively few unskilled light jobs are performed in a seated position.
>
> "Frequent" means occurring from one-third to two-thirds of the time. Since frequent lifting or carrying requires being on one's feet up to two-thirds of a workday, the full range of light work requires standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday. Sitting may occur intermittently during the remaining time. The lifting requirement for the majority of light jobs can be accomplished with occasional, rather than frequent, stooping. Many unskilled light jobs are performed primarily in one location, with the ability to stand being more critical than the ability to walk. They require use of arms and hands to grasp and to hold and turn objects, and they generally do not require use of the fingers for fine activities to the extent required in much sedentary work.

SSR 83-10, 1983 WL 31251, at *5-6.

An ALJ determines a claimant's RFC by considering how the claimant's impairments may cause physical and mental limitations that affect the person's ability to work. 20 C.F.R. § 404.1545(a). The regulations define both "light work" and "sedentary work." 20 C.F.R. § 404.1567(a) & (b). While Plaintiff focuses on the limitations for standing, "[t]he basic distinction between the two classifications is the weight-lifting ability of the claimant: 'sedentary work'

involves 'lifting no more than 10 pounds at a time' and 'light work' includes 'lifting no more than 20 pounds at a time.'" *Lee v. Sullivan*, 945 F.2d 687, 693 (4th Cir. 1991). Here, in addition to his consideration of the objective medical evidence, the ALJ considered the various physicians' opinions. Dr. Graves and both of the State agency medical consultants opined that Plaintiff could lift 20 pounds occasionally and 10 pounds frequently—which fits the criteria for light work. *See* Tr. 84, 99, 734. The ALJ found that Plaintiff's ability to perform the full range of light work was impeded by additional limitations and consulted the VE about jobs that Plaintiff could perform. Tr. 40. The VE identified three jobs and Plaintiff's counsel questioned the VE specifically about the impact of the two-hour limitation on the jobs the VE identified. Tr. 70. The VE testified that the jobs could be performed with the two-hour limitation and a sit/stand option and that he had observed the identified jobs in the actual work settings. Tr. 70-71. The ALJ concluded that Plaintiff was "capable of making a successful adjustment to other work that exists in significant numbers in the national economy." Tr. 41.

In his RFC assessment the ALJ made "a reasonable adjustment between 'light work' and 'sedentary work.'" *Lee v. Sullivan*, 945 F.2d at 693. The undersigned recommends that substantial evidence supports a finding that the ALJ considered Plaintiff's impairments and limitations and properly determined that Plaintiff was able to perform a limited range of light work.

### 3.     Sedentary Work and Medical-Vocational Guidelines

Plaintiff contends that because the ALJ's finding for light work cannot be sustained, based on his age, education, and lack of transferable skills the Medical-Vocational Guidelines ("Grids") Rule 201.14 directs a finding of disability. Pl.'s Br. 21. Plaintiff asserts the "Grids rules are conclusive and cannot be rebutted by the testimony of a vocational expert." *Id.* at 21-22

(citing SSR 83-5a, 1983 WL 31250). The Commissioner contends that "[b]ecause the ALJ did not limit Plaintiff to sedentary work, the ALJ correctly applied the grid rules for light work as a framework for decision-making when deciding his case" and "appropriately consulted a VE to determine whether Plaintiff could make a vocational adjustment to other jobs existing in significant numbers in the national economy." Def.'s Br. 17.

The Grids are guidelines, located at 20 C.F.R. Part 404, Subpart P, Appendix 2. *See Heckler v. Campbell*, 461 U.S. at 461. The Grids consist of three "Tables," each representing a different RFC, including sedentary (Table 1), light (Table 2), and medium work (Table 3). *Id.* Each table then accounts for other vocational factors, including age, education, and previous work experience. For each combination of factors, the Grids provide whether the claimant is "Disabled" or "Not disabled." *Id.* Once an ALJ determines a claimant's RFC, the ALJ may use the Grids to determine the claimant's level of disability and potential for employment. *Walker v. Bowen*, 889 F.2d 47, 50 (4th Cir. 1989). In this case the ALJ found that based on the record Plaintiff had the RFC to perform light work with certain exertional limitations. Tr. 36. The ALJ noted that if Plaintiff had the RFC to perform the full range of light work "a finding of 'not disabled' would be directed by Medical-Vocational Rule 202.14."[8] Tr. 40. Because the ALJ determined Plaintiff's RFC included exertional and non-exertional limitations, the Grid Rules do not apply and instead are used "in conjunction with the definitions and discussions provided in the rest of the regulations, as a framework for decisionmaking." SSR 83-14, 1983 WL 31254, at *1; *see also Walker v. Bowen*, 889 F.2d 47 at 49 ("[W]hen a claimant suffers from both

---

[8] Rule 202.14 is found in Table 2 of the Grids that determines disability for individuals limited to light work. 20 C.F.R. Pt. 404, Subpt. P, App. 2. Rule 202.14 refers to an individual closely approaching advanced age, who is at least high school graduate with skilled or semi-skilled skills that are non-transferable and that Rule concludes that such an individual is "not disabled."

exertional and nonexertional limitations, the grid tables are not conclusive but may only serve as guidelines."); 20 C.F.R. § 404.1569a.

Plaintiff's RFC placed him between the sedentary and light ranges, and he suffered from both exertional and non-exertional limitations. Accordingly, the ALJ consulted with a VE to determine if there was work which existed in significant numbers that Plaintiff could perform. Because the VE credibly testified that there was such work, substantial evidence supports the ALJ's conclusion that Plaintiff is not disabled. Furthermore, because the undersigned recommends a finding that the ALJ's determination that Plaintiff has the RFC to perform a limited range of light work is supported by substantial evidence, Plaintiff's assertion that under the Grids he would be entitled to disability if he were limited to sedentary work is not a basis for remand.

### 4.    ALJ's Credibility Finding

In Plaintiff's final argument he asserts that the ALJ failed to properly evaluate his subjective symptoms and issued an improper conclusory credibility finding. Pl.'s Br. 22. Plaintiff contends that the ALJ's findings regarding his daily activities and conservative treatment are not supported by substantial evidence given Plaintiff's "many qualifying statements" regarding his symptoms and mitigating factors limiting his access to treatment and medication. *Id.* at 24-26. The Commissioner argues that the ALJ "outlined the medical evidence that contradicted Plaintiff's complaints of disabling symptoms and limitations . . . [and] noted that the objective findings in this case failed to provide strong support for Plaintiff's allegations of disabling symptoms and limitations beyond those included in the RFC (Tr. 37)." Def.'s Br. 21.

SSR 96-7p[9] requires that, prior to considering Plaintiff's subjective complaints the ALJ

---

[9] Earlier this year the Social Security Administration published SSR 16-3p, 2016 WL 1119029

must find there is an underlying impairment that has been established by objective medical evidence that would reasonably be expected to cause the subjective complaints of the severity and persistence alleged. Only then is the ALJ to move to the second step: consideration of the record as a whole, including both objective and subjective evidence, to assess the claimant's credibility regarding the severity of her subjective complaints, including pain. *See* SSR 96-7p, 1996 WL 374186, at *2; *see also* 20 C.F.R. § 404.1529(b); *Craig v. Chater*, 76 F.3d at 591-96. The requirement of considering a claimant's subjective complaints does not mean the Commissioner must accept those complaints on their face. The ALJ may consider the claimant's credibility in light of her testimony and the record as a whole. If he rejects a claimant's testimony about a claimant's pain or physical condition, the ALJ must explain the basis for such rejection to ensure that the decision is sufficiently supported by substantial evidence. *Hatcher v. Sec'y, Dep't of Health & Human Servs.*, 898 F.2d 21, 23 (4th Cir. 1989) (quoting *Smith v. Schweiker*, 719 F.2d 723, 725 n.2 (4th Cir. 1984)). The reasons given for the ALJ's credibility assessment "must be grounded in the evidence and articulated in the determination or decision." SSR 96-7p, 1996 WL 374186, at *4. "The determination or decision must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." *Id.*; *see Mickles v. Shalala*, 29 F.3d at 927 ("Although a claimant's allegations about her pain may not be discredited solely because they are not substantiated by objective evidence of the pain itself or its

_____

(2016), which supersedes SSR 96-7p, eliminates use of the term "credibility," and clarifies that subjective symptom evaluation is not an examination of an individual's character. Because the ALJ decided this case prior to March 16, 2016, the effective date of SSR 16-3p, the court analyzes the ALJ's decision based on the provisions of SSR 96-7p, which required assessment of the claimant's credibility. Although SSR 16-3p eliminates the assessment of credibility, it

severity, they need not be accepted to the extent they are inconsistent with the available evidence, including objective evidence of the underlying impairment, and the extent to which that impairment can reasonably be expected to cause the pain the claimant alleges she suffers . . . ."). The Ruling further requires "[a]ssessment of the credibility of an individual's statements about pain or other symptoms and about the effect the symptoms have on his or her ability to function must be based on a consideration of all of the evidence in the case record." 1996 WL 374186, at *5. This evidence includes statements "about the individual's medical history, treatment and response, prior work record and efforts to work, daily activities, and other information concerning the individual's symptoms and how the symptoms affect the individual's ability to work." *Id.* SSR 96-7p provides further guidance on how to evaluate a claimant's credibility, indicating that "[o]ne strong indication of the credibility of an individual's statements is their consistency, both internally and with other information in the case record." SSR 96-7p, 1996 WL 374186, at *5.

Here, the ALJ found, after "careful consideration of the evidence," that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, [Plaintiff's] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible for the reasons explained in this decision."[10] Tr. 37. The ALJ noted that although he accepted Plaintiff's "allegations that his symptoms limited his physical functional capacity to a mild degree, he is not credible to the extent that his capacity was so limited that he was unable to engage in substantial gainful activity consistent with the residual functional capacity that the undersigned has assessed." *Id.* The ALJ found that

---

requires assessment of most of the same factors to be considered under SSR 96-7p.
[10] As noted above in footnote 7, Plaintiff's treating physician opined that Plaintiff's statements concerning his symptoms and functional limitations were not consistent with the objective

the objective findings failed to provide strong support for Plaintiff's allegations of disabling symptoms and limitations and "[m]ore specifically, the medical findings do not support the existence of limitations greater than those determined [in the RFC]." *Id.* The ALJ discussed Plaintiff's medical records from 2012 through 2014, the medical opinions, and Plaintiff's reported daily activities and concluded that "[i]n light of the aforementioned inconsistencies, particularly the relatively conservative treatment of claimant's symptoms, as well as the claimant's level of daily activity, the undersigned cannot find the claimant's allegation that he is incapable of all work activity to be credible." Tr. 39.

Social Security rules and regulations recognize that chronic pain may not necessarily be provable by objective diagnostic studies and that the subjective complaints of a claimant should be given fair consideration in making a determination of disability. 20 C.F.R. § 404.1529; SSR 96-7p. When evaluating a claimant's complaints of chronic pain, the ALJ is directed to consider such factors as the claimant's daily activities, location, frequency and intensity of the claimant's pain symptoms, any precipitating or aggravating factors, the effectiveness of any pain medications, treatment received, and any measures used to relieve pain or other symptoms. 20 C.F.R. § 404.1529(c)(3)(i)-(vi). A claimant's symptoms, including pain, are considered to diminish the capacity for work to the extent that alleged functional limitations are reasonably consistent with objective medical evidence and other evidence. 20 C.F.R. § 404.1529(c)(4). "[A] formalistic factor-by-factor recitation of the evidence" is unnecessary as long as the ALJ "sets forth the specific evidence he relies on in evaluating the claimant's credibility." *White v. Massanari,* 271 F.3d 1256, 1261 (10th Cir. 2001). Here the ALJ discussed Plaintiff's impairments of status post thoracic aortic dissection with residual right upper extremity

_____

medical evidence.

weakness, left lower extremity atrophy, and degenerative disease of the cervical spine. Tr. 35-36. The ALJ also considered Plaintiff's statements that he was "unable to work due to shortness of breath, little use of his right hand, and leg problems" along with Plaintiff subjective complaints of "constant pain in his chest and right arm." Tr. 37. The ALJ discussed the objective medical evidence including Plaintiff's surgery in April 2012 for aortic dissection, treatment notes from November 2012 that Plaintiff "continued to complain of pain and increased weakness and atrophy in his right arm and left leg"; reports of "decreased sensation in his right upper extremity as well as left lower extremity muscle weakness in January 2013" and worsening paresthesias in his right upper extremity; and treatment records from November 2013 to April 2014 revealing continued complaints of right arm weakness and left leg weakness, the need for a cane, and "persistent sternum pain when walking." Tr. 37-38. The ALJ noted other measures used by Plaintiff to attempt to relieve lower extremity swelling and his report that he was unable to afford all his medications. Tr. 38. As discussed previously in this Report, the ALJ also considered the medical opinion evidence. Tr. 38-39.

When considering whether an ALJ's credibility determinations are supported by substantial evidence, a district court does not replace its own credibility assessments for those of the ALJ; rather, the court scrutinizes the evidence to determine if it is sufficient to support the ALJ's conclusions. In reviewing the record for substantial evidence, the court does not re-weigh conflicting evidence, reach independent determinations as to credibility, or substitute its own judgment for that of the Commissioner. *Hays,* 907 F.2d at 1456. Because the ALJ had the "opportunity to observe the demeanor and to determine the credibility of the claimant, the ALJ's observations concerning these questions are to be given great weight." *Shively v. Heckler,* 739 F.2d 987, 989 (4th Cir. 1984). The undersigned has considered Plaintiff's challenges and has

reviewed the record. Based on this review and applicable law, the undersigned finds that the ALJ's decision reflects that she considered the relevant factors in weighing Plaintiff's credibility. Therefore, the undersigned recommends a finding that Plaintiff cannot demonstrate that the ALJ's credibility analysis as a whole is unsupported by substantial evidence or controlled by an error of law. *See Hines v. Barnhart,* 453 F.3d 559, 565 n. 3 (4th Cir. 2006) (noting that a claimant's allegations "need not be accepted to the extent that they are inconsistent with available evidence"); *Hunter v. Sullivan,* 993 F.2d 31, 35 (4th Cir. 1993) (per curiam) (finding that the ALJ may properly consider inconsistencies between a plaintiff's testimony and the other evidence of record in evaluating the credibility of the plaintiff's subjective complaints).

III.    Conclusion and Recommendation

The court's function is not to substitute its own judgment for that of the ALJ, but to determine whether the ALJ's decision is supported as a matter of fact and law. Based on the foregoing, the undersigned finds that the Commissioner performed an adequate review of the whole record evidence and that the decision is supported by substantial evidence.

Accordingly, pursuant to the power of the court to enter a judgment affirming, modifying, or reversing the Commissioner's decision with remand in Social Security actions under the Act, it is recommended that the Commissioner's decision be affirmed.

IT IS SO RECOMMENDED.

December 28, 2016                                    Kaymani D. West
Florence, South Carolina                            United States Magistrate Judge


**The parties are directed to note the important information in the attached
"Notice of Right to File Objections to Report and Recommendation."**